UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

MELVYN KLEIN, Derivatively on Behalf of
ZILLOW GROUP, INC.,

NO.

Plaintiff,

**VERIFIED DERIVATIVE
COMPLAINT**

v.

RICHARD N. BARTON, ERIK C.
BLACHFORD, LLOYD D. FRINK, JAY C.
HOAG, GREGORY B. MAFFEI, SPENCER M.
RASCOFF, GORDON S. STEPHENSON, AND
APRIL UNDERWOOD,

Defendants,

and

ZILLOW GROUP, INC.

Nominal Defendant.

Plaintiff Melvyn Klein ("Plaintiff"), by and through his undersigned counsel, derivatively

on behalf of Nominal Defendant Zillow Group, Inc. ("Zillow" or the "Company"), submits this

Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based

upon his personal knowledge as to himself and his own acts, and upon information and belief,

developed from the investigation and analysis by Plaintiff's counsel, including a review of

publicly available information, including filings by Zillow with the U.S. Securities and Exchange

Commission ("SEC"), press releases, news reports, analyst reports, investor conference

VERIFIED DERIVATIVE COMPLAINT - 1

transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought in the right, and for the benefit, of Zillow against certain of its officers and directors seeking to remedy Defendants' breach of fiduciary duties, abuse of control, waste of corporate assets, unjust enrichment and violations of Section 14(a) of the Securities Exchange Act of 1934 that occurred between January 1, 2015 and the present (the "Relevant Period") and have caused substantial harm to Zillow.

2. In April 2017, the Company received a Civil Investigative Demand ("CID") from the Consumer Financial Protection Bureau ("CFPB") that requested information related to its March 2017 response to the CFPB's February 2017 Notice and Opportunity to Respond and Advise ("NORA") letter.

3. The letter stated that the bureau's Office of Enforcement was considering whether to recommend that the CFPB take legal action against Zillow, alleging that it violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA")[1] and Section 1036 of Consumer Financial Protection Act ("CFPA") and whether the Company's advertising revenues violated regulations against kickbacks.

4. The CFPB investigation centers around RESPA, and how a real estate agent or lender gets business from a home buyer. RESPA prevents agents and lenders from funneling customers to one another in exchange for kickbacks or rewards.

5. The CFPB is investigating Zillow's "co-marketing" plan, which allows a real estate agent to share the cost of an ad on its website with a preferred lender. It can make those lenders or agents appear as they are receiving approval from each other or from Zillow.

6. The notice stemmed from an inquiry that commenced in 2015 when the Company received and responded to an initial CID from the CFPB.

---

[1] RESPA (12 U.S.C. 2601, *et seq.*) became effective on June 20, 1975. RESPA requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process. RESPA also prohibits specific practices, such as kickbacks, and places limitations upon the use of escrow accounts. The Department of Housing and Urban Development ("HUD") originally promulgated Regulation X, which implements RESPA.

VERIFIED DERIVATIVE COMPLAINT - 2

1    7.    On August 8, 2017, the Company filed a quarterly report on Form 10-Q with the

2    SEC, announcing its financial and operating results for the quarter ended June 30, 2017. It was in

3    this Form 10-Q that the Company stated:

> In April 2017, we received a Civil Investigative Demand from the
> Consumer Financial Protection Bureau ("CFPB") requesting
> information related to our March 2017 response to the CFPB's
> February 2017 Notice and Opportunity to Respond and Advise
> ("NORA") letter. The NORA letter notified us that the CFPB's
> Office of Enforcement was considering whether to recommend that
> the CFPB take legal action against us, alleging that we violated
> Section 8 of the Real Estate Settlement Procedures Act ("RESPA")
> and Section 1036 of the Consumer Financial Protection Act
> ("CFPA"). This notice stemmed from an inquiry that ***commenced
> in 2015*** when we received and responded to an initial Civil
> Investigative Demand from the CFPB. We continue to cooperate
> with the CFPB in connection with requests for information. Based
> on correspondence from the CFPB in August 2017, we understand
> that it has concluded its investigation. The CFPB has invited us to
> discuss a possible settlement and indicated that it intends to pursue
> further action if those discussions do not result in a settlement. We
> continue to believe that our acts and practices are lawful and that
> our comarketing program allows lenders and agents to comply
> with RESPA, and we will vigorously defend against any
> allegations to the contrary. Should the CFPB commence an action
> against us, it may seek restitution, disgorgement, civil monetary
> penalties, injunctive relief or other corrective action. We cannot
> provide assurance that the CFPB will not commence a legal action
> against us in this matter, nor are we able to predict the likely
> outcome of any such action. We have not recorded an accrual
> related to this matter as of June 30, 2017 or December 31, 2016.
> There is a reasonable possibility that a loss may be incurred;
> however, the possible loss or range of loss is not estimable.
> [Emphasis added].

8.    On this news, the Company's share price fell $7.43, or 15.5%, over two trading

days to close at $40.50 on August 10, 2017.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over all claims under 28 U.S.C. § 1332 because there is

complete diversity among the parties and the amount in controversy exceeds the sum of $75,000,

VERIFIED DERIVATIVE COMPLAINT - 3

exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court also has jurisdiction over the claims asserted herein under 28 U.S.C. § 1331 because the claims arise under and pursuant to § 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 promulgated there under (17 C.F.R. § 240.14a-9).

11.     The Court has jurisdiction over each defendant because each defendant is either a corporation that does sufficient business in Washington, or is an individual who has sufficient minimum contacts with Washington so as to render the exercise of jurisdiction by the Washington courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the defendants either resides in or maintains executive offices in this District, including Nominal Defendant Zillow, a substantial portion of the transactions and wrongs complained of herein – including Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting in violations of fiduciary duties owed to Zillow – occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

13.     In connection with the acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

## CODE OF BUSINESS CONDUCT AND ETHICS

14.     As members of Zillow's Board of Directors ("Board"), Defendants (defined below) were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies, and assuring the integrity of its financial and business records. The Company's Code of Conduct states in relevant part:

VERIFIED DERIVATIVE COMPLAINT - 4

**Compliance with Laws, Rules and Regulations**

The Company requires that all persons subject to this Code comply with all laws, rules and regulations applicable to the Company wherever it does business. Every person subject to this Code is expected to use good judgment and common sense in seeking to comply with all applicable laws, rules and regulations and to ask for advice from the General Counsel when uncertainties arise.

If any person subject to this Code becomes aware of the violation of any law, rule or regulation by the Company, whether by its officers, employees, directors, or any third party doing business on behalf of the Company, it is such person's responsibility to follow the guidelines described in the Reporting and Compliance Procedures section below to promptly report the matter to such person's supervisor or the General Counsel or, if you are an executive officer or director, to the Chair of the Nominating and Governance Committee of the Board of Directors of Zillow Group, Inc. (the "Board").

15.     Further, the conduct of Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Zillow, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that Defendants were aware posed a risk of serious injury to the Company.

16.     Zillow maintains a Code of Ethics, which states:

**Principles Governing Professional and Ethical Conduct**

It is the policy of Zillow Group, Inc. (the "Company") that the Company's Chief Executive Officer, Chief Financial Officer, principal accounting officer and controller (or persons performing similar functions) adhere to, advocate and promote the following principles:

- Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

- Full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with, or submits to, the Securities and Exchange Commission (the "SEC") and other public communications made by the Company; and

- Compliance with governmental laws, rules and regulations applicable to the Company. As used in this Code, the term "Company" includes Zillow Group, Inc. and all companies of which Zillow Group, Inc. owns and has the right to vote shares or other interests representing more than 50% of the voting power of such companies, whether directly or indirectly through one or more intermediaries.

## PARTIES

**Plaintiff**

17.     Plaintiff Melvyn Klein is, and was at relevant times, a shareholder of Zillow. Plaintiff Klein purchased Zillow shares on February 21, 2014, and retains these shares as of the date of the Complaint's filing. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation. Plaintiff is a citizen of New York.

**Nominal Defendant**

18.     Nominal Defendant Zillow is a Washington company with offices and operations in Washington. Zillow provides e-commerce services. The Company provides information about homes, real estate listings, and mortgages through their website and mobile applications. Zillow serves homeowners, buyers, sellers, renters, and real estate professionals throughout the United States.

**Director Defendants**

19.     ***Defendant Richard N. Barton*** ("Barton") is the co-founder of the Company and has served as its Executive Chairman since September 2010. Barton has also served as a director of the Company since December 2004 and has served as the Company's Chief Executive Officer ("CEO") from December 2004 until September 2010. Upon information and belief, Barton is a citizen of Washington.

20.     ***Defendant Erik C. Blachford*** ("Blachford") has been a director of the Company since 2005. Blachfold has also served as a member of the Board's Audit Committee during the Relevant Period. Blachford is also a member of the Compensation Committee. Upon information and belief, Blachford is a citizen of California.

VERIFIED DERIVATIVE COMPLAINT - 6

21.     **Defendant Lloyd D. Frink** ("Frink") is a co-founder of the Company and has served as a director since the Company's inception. Frink is the Vice Chairman of the Board. Upon information and belief, Frink is a citizen of Washington.

22.     **Defendant Jay C. Hoag** ("Hoag") has been a director of the Company since 2005. Hoag is the Chairman of the Compensation Committee. Upon information and belief, Hoag is a citizen of California.

23.     **Defendant Gregory B. Maffei** ("Maffei") has been a director of the Company since 2005. Maffei also served as the Chairman of the Audit Committee during the Relevant Period. Upon information and belief, Maffei is a citizen of Colorado.

24.     **Defendant Spencer M. Rascoff** ("Rascoff") has been the Company's CEO since 2010 and a director since 2011. Upon information and belief, Rascoff is a citizen of Washington.

25.     **Defendant Gordon S. Stephenson** ("Stephenson") has been a director of the Company since 2005. Stephenson also served as a member of the Audit Committee during the Relevant Period. Upon information and belief, Stephenson is a citizen of Washington.

26.     **Defendant April Underwood** ("Underwood") has been a director of the Company from February 2017. Underwood is a member of the Compensation Committee. Upon information and belief, Underwood is a citizen of California.

27.     Defendants Barton, Blachford, Frink, Hoag, Maffei, Roscoff, Stephenson, and Underwood are herein referred to as "Defendants."

## FALSE STATEMENTS ISSUED DURING THE RELEVANT PERIOD

28.     On May 12, 2015, Zillow filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 ("Q1 2015 10-Q"). The Q1 2015 10-Q stated that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On August 5, 2015, Zillow filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 ("Q2 2015 10-Q"). The Q2 2015 10-Q stated that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On November 5, 2015, Zillow filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 ("Q3 2015 10-Q"). The Q3 2015 10-Q stated that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On February 12, 2016, the Company filed a Form 10-K that announced its financial and operating results for the quarter and year ended December 31, 2015 ("2015 Form 10-K"). The 2015 Form 10-K stated the following regarding the Company's adherence to government regulations:

**Government Regulation**

We are affected by laws and regulations that apply to businesses in general, as well as to businesses operating on the Internet and through mobile applications. This includes a continually expanding and evolving range of laws, regulations and standards that address information security, data protection, privacy, consent and advertising, among other things. We are also subject to laws governing marketing and advertising activities conducted by telephone, email, mobile devices, and the Internet, including the Telephone Consumer Protect Act, the Telemarketing Sales Rule, the CAN-SPAM Act, and similar state laws. In addition, some of our mortgage advertising products are operated by our wholly owned subsidiary, Zillow Group Mortgages, Inc., a licensed mortgage broker, pursuant to a support services agreement. Though we do not take mortgage applications or make loans or credit decisions in connection with loans, Zillow Group Mortgages, Inc. is subject to stringent state and federal laws and regulations and to the scrutiny of state and federal government agencies as a licensed mortgage broker.

> By providing a medium through which users can post content and communicate with one another, we may also be subject to laws governing intellectual property ownership, obscenity, libel, and privacy, among other issues. In addition, the real estate agents, mortgage professionals, banks, property managers, rental agents and some of our other customers and advertisers on our mobile applications and websites rentals and mortgages. ***We endeavor to ensure that any content created by Zillow is consistent with such laws and regulations by obtaining assurances of compliance from our advertisers and consumers for their activities through, and the content they provide on, our mobile applications and websites***. The real estate, mortgages, and rentals industries are subject to significant state and federal regulation; though we provide advertising services and technology solutions to real estate, mortgages, and rentals professionals, certain of our activities may be deemed to be covered by these industry regulations. Since the laws and regulations governing real estate, rentals and mortgages are constantly evolving, it is possible that we may have to materially alter the way we conduct some parts of our business activities or be prohibited from conducting such activities altogether at some point in the future.

(Emphasis added).

32.     On February 2, 2017, the Company filed an Annual Report on Form 10-K with the SEC that announced its financial and operating results for the quarter and year ended December 31, 2016 ("2016 Form 10-K"). The 2016 Form 10-K stated the following regarding the Company's adherence to government regulations:

> **Government Regulation**
>
> We are affected by laws and regulations that apply to businesses in general, as well as to businesses operating on the internet and through mobile applications. This includes a continually expanding and evolving range of laws, regulations and standards that address information security, data protection, privacy, consent and advertising, among other things. We are also subject to laws governing marketing and advertising activities conducted by telephone, email, mobile devices, and the internet, including the Telephone Consumer Protect Act, the Telemarketing Sales Rule, the CAN-SPAM Act, and similar state laws. In addition, some of our mortgage advertising products are operated by our wholly owned subsidiary, Zillow Group Mortgages, Inc., a licensed mortgage broker, pursuant to a support services agreement. Though we do not take mortgage applications or make loans or

credit decisions in connection with loans, Zillow Group Mortgages, Inc. is subject to stringent state and federal laws and regulations and to the scrutiny of state and federal government agencies as a licensed mortgage broker.

By providing a medium through which users can post content and communicate with one another, we may also be subject to laws governing intellectual property ownership, obscenity, libel, and privacy, among other issues. In addition, the real estate agents, mortgage professionals, banks, property managers, rental agents and some of our other customers and advertisers on our mobile applications and websites are subject to various state and federal laws and regulations relating to real estate, rentals and mortgages. ***We endeavor to ensure that any content created by Zillow Group is consistent with such laws and regulations by obtaining assurances of compliance from our advertisers and consumers for their activities through, and the content they provide on, our mobile applications and websites***. The real estate, mortgages, and rentals industries are subject to significant state and federal regulation; though we provide advertising services and technology solutions to real estate, mortgages, and rentals professionals, certain of our activities may be deemed to be covered by these industry regulations. Since the laws and regulations governing real estate, rentals and mortgages are constantly evolving, it is possible that we may have to materially alter the way we conduct some parts of our business activities or be prohibited from conducting such activities altogether at some point in the future.

(Emphasis added).

33.     On May 4, 2017, the Company filed a quarterly report on Form 10-Q with the SEC that announced its financial and operating results for the quarter ended March 31, 2017 ("Q1 2017 10-Q"). The Q1 2017 10-Q stated that the financial information contained therein was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.     The statements referenced in ¶¶ 28-33 were false and misleading because the Company made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, the Company made false and/or misleading statements and/or failed to disclose that: (a) the

VERIFIED DERIVATIVE COMPLAINT - 10

Company's co-marketing program did not comply with RESPA; and (b) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**THE TRUTH EMERGES**

35.     In April 2017, the Company received a CID from the CFPB that questioned the Company's advertising revenues and whether they violated regulations against kickbacks.

36.     On August 8, 2017, the Company filed a quarterly report on Form 10-Q with the SEC that announced its financial and operating results for the quarter ended June 30, 2017. The Form 10-Q also stated in relevant part:

> In April 2017, we received a Civil Investigative Demand from the Consumer Financial Protection Bureau ("CFPB") requesting information related to our March 2017 response to the CFPB's February 2017 Notice and Opportunity to Respond and Advise ("NORA") letter. The NORA letter notified us that the CFPB's Office of Enforcement was considering whether to recommend that the CFPB take legal action against us, alleging that we violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA") and Section 1036 of the Consumer Financial Protection Act ("CFPA"). This notice stemmed from an inquiry that commenced in 2015 when we received and responded to an initial Civil Investigative Demand from the CFPB. We continue to cooperate with the CFPB in connection with requests for information. Based on correspondence from the CFPB in August 2017, we understand that it has concluded its investigation. The CFPB has invited us to discuss a possible settlement and indicated that it intends to pursue further action if those discussions do not result in a settlement. We continue to believe that our acts and practices are lawful and that our comarketing program allows lenders and agents to comply with RESPA, and we will vigorously defend against any allegations to the contrary. Should the CFPB commence an action against us, it may seek restitution, disgorgement, civil monetary penalties, injunctive relief or other corrective action. We cannot provide assurance that the CFPB will not commence a legal action against us in this matter, nor are we able to predict the likely outcome of any such action. We have not recorded an accrual related to this matter as of June 30, 2017 or December 31, 2016. There is a reasonable possibility that a loss may be incurred; however, the possible loss or range of loss is not estimable.

1

## **DAMAGES TO ZILLOW CAUSED BY DEFENDANTS**

2   37.   Plaintiff, derivatively on behalf of Zillow, seeks relief for the damage sustained,

3   and to be sustained, by Zillow as a result of Defendants' breaches of their fiduciary duties and

4   knowing and/or intentional behavior. Defendants' breaches of their fiduciary duties have

5   proximately caused, and will continue to cause, Zillow to suffer substantial monetary damages as

6   a result of the wrongdoing herein, including, among other things:

7   (a)   costs incurred from investigating, defending and paying any settlement or

8   judgment in the Securities Class Actions[2] for violations of federal securities laws;

9   (b)   damage to Zillow's reputation and good will (including perhaps

10   irreparable damage to Zillow's reputation and credibility with insurance and securities

11   regulators, and to Zillow's reputation and credibility in the business, insurance, and financial

12   communities);

13   (c)   resultant loss of business and business opportunities;

14   (d)   increased costs of capital;

15   (e)   a huge loss in market value and stockholder equity; and

16   (f)   costs incurred in connection with the CFPB investigation and possible

17   fines and/or penalties.

18   38.   Zillow has been directly and substantially injured by reason of Defendants'

19   intentional breach and/or reckless disregard of their fiduciary duties to the Company. Plaintiff, as

20   a stockholder and representative of Zillow, seeks damages and other relief for the Company, in

21   an amount to be proven at trial.

22

23

24

25

26

27   _____

[2]  The cases are *Shotwell v. Zillow Group, Inc., et al.*, 2:17-cv-01387 (W.D. Wash.) and *Vargoskov v. Zillow Group, Inc., et al.*, Case 2:17-cv-06207 (C.D. Cal.).

VERIFIED DERIVATIVE COMPLAINT - 12

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

39.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties, abuse of control, waste of corporate assets, unjust enrichment and violations of Section 14(a) of the Securities Exchange Act of 1934 by Defendants.

40.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

41.     Plaintiff is a current owner of Zillow stock and has continuously been an owner of Zillow stock during all times relevant to Defendants' illegal and wrongful course of conduct alleged herein. Plaintiff understands his obligation to hold stock throughout the duration of this action and are prepared to do so.

42.     During wrongful course of conduct at the Company, the Board consisted of Defendants Barton, Blachford, Frink, Hoag, Maffei, Roscoff, Stephenson, and Underwood. Because of the facts set forth throughout this Complaint, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

43.     The Board is currently comprised of eight (8) members – Defendants Barton, Blachford, Frink, Hoag, Maffei, Roscoff, Stephenson, and Underwood. Thus, Plaintiff is required to show that a majority of Defendants, *i.e.*, four (4), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

44.     Defendants face a substantial likelihood of liability in this action because they caused the Company to make false and/or misleading statements regarding the Company's co-marketing program. Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the

highest levels.

45.     Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

46.     Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

47.     Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein, and are therefore not disinterested parties.

48.     Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

49.     Because of their participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendants are unable to comply with their fiduciary duties and prosecute this action.

50.     Additionally, each of the defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## DEFENDANTS ARE NOT INDEPENDENT OR DISINTERESTED

**Defendant Rascoff**

51.     Defendant Rascoff has been CEO since 2010 and a director since 2011.

52.     Defendant Rascoff is a named Defendant in the instant action and in the Securities Class Actions.

53.     Defendant Rascoff is not disinterested or independent, and therefore, is incapable of considering demand because Rascoff (as CEO) is an employee of the Company who derives substantially all of his income from his employment with Zillow, making him not independent. As such, Rascoff cannot independently consider any demand to sue himself for breaching his fiduciary duties to Zillow, because that would expose him to liability and threaten his livelihood.

54.     Accordingly, Rascoff lacks independence from Defendants Blachford, Hoag, and Underwood, defendants who are not disinterested and who exert influence over Rascoff's compensation by virtue of their positions as representing the entire Compensation Committee. This lack of independence and financial benefits received by Rascoff renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

**Defendant Frink**

55.     Defendant Frink is the Company's co-founder and has served as Vice Chairman since March 2011, as a member of the Board since inception in December 2004, and as President since February 2005. Defendant Frink previously served as the Company's Vice President from December 2004 to February 2005, as its Treasurer from December 2009 to March 2011 and as its Chief Strategy Officer from September 2010 to March 2011.

56.     Defendant Fink is not disinterested or independent, and therefore, is incapable of considering demand because Fink (as Vice Chairman and President) is an employee of the Company who derives substantially all of his income from his employment with Zillow, making him not independent. As such, Fink cannot independently consider any demand to sue himself for breaching his fiduciary duties to Zillow, because that would expose him to liability and

threaten his livelihood.

57.     Accordingly, Fink lacks independence from Defendants Blachford, Hoag, and Underwood, defendants who are not disinterested and who exert influence over Fink's compensation by virtue of their positions as representing the entire Compensation Committee.

58.     Defendant Frink also owns 39.5% of the Class B voting stock of Zillow.

**Defendant Barton**

59.     Defendant Barton is the Company's co-founder and has served as Executive Chairman since September 2010. Defendant Barton has been a member of the Board since inception in December 2004 and served as Chief Executive Officer from inception until September 2010.

60.     Defendant Barton is not disinterested or independent, and therefore, is incapable of considering demand because Barton (as Executive Chairman) is an employee of the Company who derives substantially all of his income from his employment with Zillow, making him not independent. As such, Barton cannot independently consider any demand to sue himself for breaching his fiduciary duties to Zillow, because that would expose him to liability and threaten his livelihood.

61.     Accordingly, Barton lacks independence from Defendants Blachford, Hoag, and Underwood, defendants who are not disinterested and who exert influence over Fink's compensation by virtue of their positions as representing the entire Compensation Committee.

62.     Further, Defendants Barton and Blachford are 50% co-owners of a condominium. And, Defendant Barton owns 60.5% of the Class B voting stock of Zillow.

**Defendants Maffei, Blachford and Stephenson**

63.     Defendant Maffei is the Chair of the Audit Committee and is described by the Company as an "financial expert".

64.     Defendant Blachford is a member of the Audit Committee.

65.     Defendant Stephenson is a member of the Audit Committee

66.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*:

- Prior to filing any periodic report with the SEC, meet with management and the independent auditor to review and discuss the annual audited financial statements (including the report of the independent auditor thereon) and quarterly unaudited financial statements, including in each case the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

- Regularly review with the independent auditor any audit problems or difficulties and management's response, including any restriction on the scope of activities, access to required information, the adequacy of internal controls, adjustments noted or proposed by the independent auditor but not taken (as immaterial or otherwise) by management, communications between the audit team and the national office concerning auditing or accounting issues, and any management or internal control letters issued or proposed to be issued by the auditor.

- If so determined by the Committee, based on its review and discussion of the audited financial statements with management and the independent auditor, its discussions with the independent auditor regarding the matters required to be discussed by statement on Auditing Standard 1301 ("Communications with Audit Committees"), as amended from time to time, and its discussions regarding the auditor's independence, recommend to the Board whether the audited financial statements be included in the Company's annual report on Form 10-K.

- Review earnings press releases, including all quarterly earnings releases, in advance of their dissemination. Discuss or review corporate policies with respect to financial information and earnings guidance provided to analysts and rating agencies.

67.     Defendants Maffei, Blachford, and Stephenson breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other

VERIFIED DERIVATIVE COMPLAINT - 17

disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the allegations that the Company violated Section 8 of RESPA and Section 1036 of the CFPA and whether the Company's advertising revenues violated regulations against kickbacks described above.  Therefore, Defendants Maffei, Blachford, and Stephenson face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Defendant Blachford**

68.    Defendant Blachford serves on the boards of directors of two privately held companies in which Defendant Barton is an investor and, for one of the companies, also serves as a board member.

69.    Defendant Blachford's family member is employed by a privately held company for which Defendant Barton serves as board member.

**Defendant Underwood**

70.    The Zillow Group is a customer of and made payments to Defendant Underwood's employer, Slack Technologies, Inc.

**Defendant Stephenson**

71.    Defendant Stephenson participates in Zillow Group's Premier Agent program, and Defendant Stephenson is the Managing Broker of Real Property Associates, which provides certain brokerage and rental management services to Defendant Rascoff.

**Additional Information**

72.    Defendants Barton and Rascoff, each in their individual capacity, and Defendant Maffei, through an entity that he owns and controls, have invested in various private equity and venture capital funds of Technology Crossover Ventures, or TCV Funds. Defendant Hoag is a direct or indirect director, limited partner, or member of the general partners of the TCV Funds.

73.    Defendant Blachford serves as a venture partner of Technology Crossover Ventures. Defendant Hoag co-founded Technology Crossover Ventures, a private equity and venture capital firm, in 1995 and continues to serve as a Founding General Partner.

VERIFIED DERIVATIVE COMPLAINT - 18

74.    In February 2016, the Company paid a total of approximately $0.2 million and $0.2 million, respectively to Defendants Frink and Barton for reimbursement of costs incurred by Frink and Barton for the incremental operating costs related to the use of private aircraft by certain of Zillow Group's employees and Defendants Frink and Barton for business travel in prior years.

### FIRST CAUSE OF ACTION
### (Against Defendants for Breach of Fiduciary Duties)

75.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

76.    Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

77.    Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

78.    Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  In breach of their fiduciary duties owed to Zillow, Defendants caused the Company to make false and/or misleading statements regarding the Company's co-marketing program and that it did not comply with RESPA.  The CFPB commenced an investigation into Zillow alleging that the Company violated Section 8 of RESPA and Section 1036 of CFPA and that the Company's advertising revenues violated regulations against kickbacks.

79.    Defendants had actual or constructive knowledge that caused and facilitated the Company to issue materially false and misleading statements. Defendants had actual knowledge of the above misrepresentations and omissions of material facts set forth herein (as early as 2015), or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

80.    As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct

alleged herein, Defendants are liable to the Company.

81. As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION
### (Against Defendants for Unjust Enrichment)

82. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein

83. By their wrongful acts and the omissions of material fact that they caused to be made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

84. During the Relevant Period, according to the Company's 2017 Proxy, in February 2017, the Board, upon the recommendation of the Compensation Committee, adopted an Amended and Restated Stock Option Grant Program for Nonemployee Directors effective March 1, 2017 (the "Amended Program"). Pursuant to the Amended Program, nonemployee directors are eligible to receive on March 1 of each year, a stock option grant for that number of shares of the Company's Class C capital stock having a Black-Scholes-Merton value of $200,000 on the date of grant (with any fractional share rounded to the nearest whole share (0.5 rounded up)). One-fourth of the shares subject to stock options granted under the Amended Program vest each quarter over one year, subject to continued service. Stock options granted under the Amended Program have ten-year terms and a per share exercise price equal to the closing price of the Company's Class C capital stock on the date of grant.

85. Plaintiff, as a shareholder and a representative of the Company, seeks restitution from Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by

1    Defendants due to their wrongful conduct and breach of their fiduciary duties.

2                           **THIRD CAUSE OF ACTION**
                       **(Against Defendants for Abuse of Control)**

3

4       86.     Plaintiff incorporates by reference and re-alleges each and every allegation set

5    forth above, as though fully set forth herein.

6       87.     Defendants' misconduct alleged herein constituted an abuse of their ability to

7    control and influence the Company, for which they are legally responsible.

8       88.     As a direct and proximate result of Defendants' abuse of control, the Company

9    has sustained significant damages. As a direct and proximate result of Defendants' breaches of

10   their fiduciary obligations of candor, good faith, and loyalty, the Company has sustained and

11   continues to sustain significant damages.

12      89.     As a result of the misconduct alleged herein, Defendants are liable to the

13   Company.  Plaintiff, on behalf of the Company, has no adequate remedy at law.

14                          **FOURTH CAUSE OF ACTION**
                    **(Against Defendants for Waste of Corporate Assets)**

15      90.     Plaintiff incorporates by reference and re-alleges each and every allegation set

16   forth above, as though fully set forth herein.

17      91.     As a result of the foregoing, and by failing to properly consider the interests of the

18   Company and its public shareholders, Defendants have caused the Company to waste valuable

19   corporate assets by failing to disclose that (a) the Company's co-marketing program did not

20   comply with RESPA and (b) as a result of the foregoing, the Company's public statements were

21   materially false and misleading at all relevant times.

22      92.     As a result of the waste of corporate assets, Defendants are each liable to the

23   Company.

24      93.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

25

26

27

VERIFIED DERIVATIVE COMPLAINT - 21

1
2

## FIFTH CAUSE OF ACTION
### (Against Defendants for Violations of Section 14(a)
### of the Securities Exchange Act of 1934)

3      94.      Plaintiff incorporates by reference and re-alleges each and every allegation above

4      as though fully set forth herein.

5      95.      Rule 14a-9, promulgated pursuant to Section 14(a) of the Securities Exchange Act

6      of 1934, provides that no proxy statement shall contain "any statement which, at the time and in

7      the light of the circumstances under which it is made, is false or misleading with respect to any

8      material fact, or which omits to state any material fact necessary in order to make the statements

9      therein not false or misleading."  17 C.F.R. § 240.14a-9.

10     96.      Here, the Company's Proxy Statement for 2017 violated Section 14(a) and Rule

11     14a-9 by omitting material facts. Defendants made false and/or misleading statements and/or

12     failed to disclose that (a) the Company's co-marketing program did not comply with RESPA and

13     (b) as a result of the foregoing, the Company's public statements were materially false and

14     misleading at all relevant times.

15     97.      The SEC created specific rules governing the content of disclosures made by

16     public companies in their filings with the SEC that are incorporated by reference. Item

17     303(A)(3)(II) of Regulation S-K ("Item 303") provides guidance on what should be included in

18     incorporated forms.

19     98.      Here, known trends existed at the time of the misleading statements and

20     omissions in the Company's 2017 Proxy (which incorporated the Company's annual report),

21     which failed to contain the disclosures required by Item 303. At the time the Company's 2017

22     Proxy was issued, the Company's co-marketing program did not comply with RESPA and (b) as

23     a result of the foregoing, the Company's public statements were materially false and misleading

24     at all relevant times.

25     99.      Had this information been known, Zillow shareholders would not have voted to

26     re-elect the offending directors.

27

100.     As a consequence of the foregoing, the Company was damaged as a result of Defendants' material misrepresentations and omissions.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.      Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.      Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C.      Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 8th day of January, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Email:  bterrell@terrellmarshall.com
    Blythe H. Chandler, WSBA #43387
    Email:  bchandler@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Thomas J. McKenna, *pro hac vice forthcoming*
Email: tjmckenna@gme-law.com
Gregory M. Egleston, *pro hac vice forthcoming*
Email: gegleston@gme-law.com
GAINEY McKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383

*Attorneys for Plainitff*